# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEIMA FAIZ JOSEPH,<br><br>    Plaintiff,<br><br>    vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant.<br>_____/ | No. 2:13-cv-2628-TLN-CMK<br><br><br><br>FINDINGS AND RECOMMENDATION |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the court are plaintiff's motion for summary judgment (Doc. 14) and defendant's cross-motion for summary judgment (Doc. 19).

## I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on January 26, 2011, alleging an onset of disability on June 1, 2007, due to depression (Certified administrative record ("CAR") 48, 111, 125-29). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on May 2, 2012, before Administrative Law Judge ("ALJ") Mary M. French. In a June 29, 2012, decision, the ALJ concluded that plaintiff is not

disabled[1] based on the following findings:

> 1. The claimant has not engaged in substantial gainful activity since January 26, 2011, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: depressive disorder, not otherwise specified, and posttraumatic stress disorder (PTSD) (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to performing

---

[1]   Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

>   Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>   Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>   Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>   Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>   Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

   The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

|   |     |                                                                                                                                                                                                          |
|---|-----|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|   |     | simple repetitive tasks.                                                                                                                                                                                 |
|   | 5.  | The claimant has no past relevant work (20 CFR 416.965).                                                                                                                                                 |
|   | 6.  | The claimant was born on August 4, 1975 and was 35 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).                                |
|   | 7.  | The claimant has a limited education and is able to communicate in English (20 CFR 416.964).                                                                                                             |
|   | 8.  | Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).                                                                                    |
|   | 9.  | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)). |
|   | 10. | The claimant has not been under a disability, as defined in the Social Security Act, since January 26, 2011, the date the application was filed (20 CFR 416.920(g)).                                     |

(CAR 12-21).

After the Appeals Council declined review on October 23, 2013, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the

1  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).
2  Therefore, where the evidence is susceptible to more than one rational interpretation, one of
3  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.
4  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal
5  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th
6  Cir. 1988).

### III.  DISCUSSION

Plaintiff argues the ALJ erred in the following ways:  (1) the ALJ failed to properly determine plaintiff's residual functional capacity; and (2) the ALJ failed to properly weigh the medical evidence in the record.

**A.    Residual Functional Capacity**

In determining residual functional capacity (RFC), the ALJ must assess what the plaintiff can still do in light of both physical and mental limitations.  See 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").  Where there is a colorable claim of mental impairment, the regulations require the ALJ to follow a special procedure.  See 20 C.F.R. §§ 404.1520a(a), 416.920a(a).  The ALJ is required to record pertinent findings and rate the degree of functional loss.  See 20 C.F.R. §§ 404.1520a(b), 416.920a(b).  The ALJ must therefore rate, and include in the decision, (1) the claimant's functional limitations in the areas of daily activities, social functioning, and concentration, persistence or pace as being either none, mild, moderate, marked, or extreme; (2) the claimant's episodes of decompensation as either none, one or two, three or four or more.  See 20 C.F.R. § 404.1520a(c)(3)-(4), (e) (4), 416.920a(c)(3)-(4), (e)(4).

Here, as to plaintiff's RFC, after discussing the medical opinions (which are addressed below), the ALJ determined that plaintiff:

/ / /

>          is only mildly impaired in activities of daily living and ability to
>          maintain social functioning is established by her admitted activities
>          and the lack of contradictory clinical findings. In addition, she has
>          never worked. Her moderate limitation in ability to maintain
>          concentration, persistence, and pace, which is reflected in the
>          residual functional capacity, is supported by her testimony, her
>          statements of record, and the observations of her treating therapist
>          and two examining psychologists. Thus, the residual functional
>          capacity herein takes into consideration the claimant's subjective
>          complaints while finding the maximum limitations based on the
>          clinical and objective evidence.

(CAR 19).

This is in addition to her earlier finding that

>          Claimant's medically determinable mental impairments cause mild
>          restrictions in activities of daily living, mild difficulties in
>          maintaining social functioning, moderate difficulties in
>          maintaining concentration, persistence, or pace, and have resulted
>          in no episodes of decompensation of extended duration.

(CAR 15).

The ALJ supported these findings based on plaintiff's testimony as to her daily activities, the psychological examiners' fairly unremarkable findings, and medical records (and lack thereof).

Plaintiff's argument as to how the ALJ erred in formulating her RFC is vague. She argues the ALJ erred in failing to perform a function-by-function evaluation of plaintiff's abilities. She does not, however, explain what the ALJ failed to do. As quoted above, the ALJ met the requirements of 20 C.F.R. § 416.920a, setting forth her functional limitations in the areas of daily activities, social functioning, and concentration, persistence or pace. To the extent there is another argument for error set forth in plaintiff's brief, it is too vague for the court to parcel out.[2]

///

---

[2] It would appear any additional argument therein is also too vague for the defendant to respond to as plaintiff contends in her reply brief that defendant failed to address the legal argument set forth in her motion for summary judgment. However, she fails to shed any additional light in her reply to make the claim more clear.

B.   **Medical Opinions**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any

conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

Here the medical evidence in the record consist of records from plaintiff's treating physician, Narinder Sandhu, M.D., notes from her treating therapist, Deborah M. Noble, M.S., and reports from two psychological consultative examiners, T. Renfro, Psy. D., and Janice Y. Nakagawa, Ph.D.  The ALJ discussed and weighed each of these opinions.

First, the ALJ found Dr. Sandhu diagnosed plaintiff with depression and anxiety, for which she was prescribed various psychotrophic medication.  There was no assessment of plaintiff by Dr. Sandhu, only limited medical treatment notes.

Next the ALJ discussed Ms. Noble's opinion, who diagnosed plaintiff with PTSD and assessed a global assessment of functioning (GAF) score of 50. The ALJ considered but found no probative value in Ms. Noble's treating source statement.  The ALJ found Ms. Noble's statement to be "conclusory, inadequately supported by clinical findings . . ., and inconsistent with the . . . medical evidence and the claimant's admitted activities of daily living ." (CAR 18-19).  The ALJ noted[3] "Ms. Nobel's statement was made in October of 2010, prior to the date of the evaluation of the claimant receiving treatment and there are no other records from Ms. Noble." (CAR 18).   Further, the ALJ noted Ms. Noble's statement, wherein she opined plaintiff was not able to work, is not from an acceptable medical source, and is not entitled to be given the same weight as a qualifying medical source opinion.

///

///

///

---

[3] Plaintiff takes issue with this finding, stating that clearly Ms. Noble had been treating plaintiff prior the October 2010 assessment.  However, as the ALJ noted, there are no records from Ms. Noble prior to November 2010.  Regardless, this is not the only reason the ALJ gave for discounting Ms. Noble's opinion.

7

As to the consultative examiners, the ALJ gave Dr. Renfro's opinion great weight. Dr. Renfro examined plaintiff on April 20, 2011. Dr. Renfro diagnosed plaintiff with depressive disorder NOS, assessed her with a GAF of 55, and expected her "to remain stable over the next 12 months with active treatment." (CAR 235). At the examination, plaintiff's general appearance was adequate, she made good eye contact and appropriate interpersonal contact, was cooperative, articulate, and relevant. She was depressed with congruent affect, was tearful when discussing her divorce, but denied feelings of hopelessness, helplessness, and worthlessness. Her thought process was concrete and coherent, she was alert and her intellectual functioning appears to be commensurate with her level and type of education. Dr. Renfro assessed that plaintiff is capable of understanding, remembering, and carrying out simple one or two-step job instructions, but unable to handle detailed or complex instructions; mildly impaired in her ability to relate or interact with coworker and the public, maintain persistence and pace, and perform work activities on a consistent basis; not impaired in her ability to associate with day-to-day work activity; able to accept simple instructions from supervisors and perform routine, non-stressful work activities. (CAR 236). The ALJ found this rather unremarkable examination to be well supported by the medical evidence, and consistent with plaintiff's self-acknowledged ability to effectively parent five minor children on her own.

Dr. Nakagawa examined plaintiff on May 3, 2012, and June 8, 2012. At the examination, plaintiff's mood was dysphoric and tearful, affect constricted at times, but no evidence of thought disorder; her attention and concentration was adequate, social judgment was good, abstract thinking abilities were intact, and her intellectual functioning was in the average range. Plaintiff reported mental health treatment, but had stopped the prior summer. Dr. Nakagawa found plaintiff intellectually capable of completing simple, if not detailed job instructions, but determined that her "underlying psychiatric problems associated with PTSD and depression would preclude her from being able to carry out such job demands." (CAR 313). Dr. Nakagawa also found plaintiff was not able to consistently relate to coworkers, supervisors, and

public, would have marked problems in maintaining pace and persistence as well as attention and concentration on a sustained basis, and problems dealing with changes in routine work settings. Dr. Nakagawa diagnosed PTSD and major depressive disorder, and assessed plaintiff with a GAF of 60. (CAR 309-14). The ALJ found Dr. Nakagawa's examination of plaintiff "yielded essentially the same mild-to-moderate mental status examination findings as Dr. Renfro obtained. Further, Dr. Nakagawa opined that the claimant was intellectually able to complete simple job tasks. Thus, her seemingly incongruous conclusion that the claimant was unable to work is particularly notable given the circumstances of her examination of the claimant." (CAR 19). The ALJ gave little weight to Dr. Nakagawa's opinion, based on "the lack of consistency with the record as a whole, including the [] medical evidence and the claimant's self-described activities." (CAR 19).

Plaintiff argues the ALJ erred in giving great weight to Dr. Renfro opinion, and no significant weight to Dr. Nakagawa's opinion. She argues Dr. Nakagawa's examination was more thorough, she had plaintiff's medical records to review where Dr. Renfro did not, both consultative examiners were equally qualified, and the reasons the ALJ provided are insufficient.

As stated above, where there are conflicting opinions it is the ALJ's duty to resolve the conflict. She did that here. In fact, the ALJ set forth each of the consulting examiners opinions, discussed each, found them conflicting, and set forth her reasons for adopting Dr. Renfro's opinion. The reasons provided, including the consistency with the medical records, consistency with plaintiff's acknowledged abilities to run a household and successfully parent five children on her own, are specific and legitimate. Although plaintiff takes issue with the use of her parenting skills as support to find her capable of working, the ALJ found her ability to successfully parent five children speaks to her abilities. Her ability to parent five children and run a household as a single parent requires more than the minimal ability required to take care of oneself. Thus, the reasons provided for resolving the conflicting consultative examiners' opinions are sufficient.

Finally, to the extent plaintiff argues the ALJ erred in discounting Ms. Noble's opinion, the undersigned finds the reasons provided for doing so are also sufficient. As the ALJ found, Ms. Noble was not a medically acceptable treating source. See 20 C.F.R. §§ 416.902, 416.913(d) (listing a therapist as an other medical source, distinguished from an acceptable medical source). Evidence from other sources may be used to show the severity of an impairment and how it affects the plaintiff's ability to work. Id. However, there is no requirement that the defendant accept or specifically refute it. See Bunnell v. Sullivan, 912 F.2d 1149, 1152 (9th Cir. 1990), *modified on other grounds*, 947 F.2d 341 (9th cir. 1991) (noting that while plaintiff "is free to offer . . . evidence [from a non-acceptable medical source] to help the [Commissioner] understand his inability to work, . . . there is no requirement that the [Commissioner] accept or specifically refute such evidence."). Thus, the undersigned finds no error in the ALJ's treatment of Ms. Noble's opinion.

## IV. CONCLUSION

Based on the foregoing, the undersigned concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, the undersigned recommends that:

1. Plaintiff's motion for summary judgment (Doc. 14) be denied;

2. Defendant's cross-motion for summary judgment (Doc. 19) be granted; and

3. The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written

///

///

///

objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 2, 2015

                                                    **CRAIG M. KELLISON**
                                                    UNITED STATES MAGISTRATE JUDGE